UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
PAMELA ANNETTE DANIELS,

                      Plaintiff,

           - against -

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-430 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Pamela Annette Daniels brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of her claim for Disability Insurance Benefits ("DIB") on December 24, 2018. The parties have cross-moved for judgment on the pleadings. (Dkts. 12, 16.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's motion. The case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

### I. Procedural History

      On March 28, 2016, Plaintiff filed an application for DIB, claiming that she had been disabled due to chronic obstructive pulmonary disease ("COPD"), hypertension, and sleep apnea since February 6, 2016. (Tr. 12, 282.)[1] The claim was initially denied on July 28, 2016. (Tr. 12, 189.) After her claim was denied, Plaintiff requested and appeared, *pro se*, for a hearing before an administrative law judge ("ALJ") on August 29, 2018. (Tr. 12, 155.) During the hearing, an "impartial vocational expert," Melissa J. Fass-Karlin, testified via telephone. (Tr. 12.) By decision

---

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript. (Dkt. 10.)

dated December 24, 2018, ALJ Mark Solomon found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") from February 6, 2016, her alleged onset date, through the date of the ALJ's decision. (Tr. 9–21.) Plaintiff's request for a review of the ALJ's decision was denied by the Appeals Council on November 26, 2019. (Tr. 1–5.) Thereafter, Plaintiff timely commenced this action.[2]

## II.     The ALJ's Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted). First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the plaintiff is not disabled. *Id.* If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment. *Id.* § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." *Id.* § 404.1522(a). If the plaintiff

---

[2] According to congressional statute,

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on December 2, 2019 (*i.e.*, 5 days after Plaintiff's request to appeal the ALJ's decision was denied on November 26, 2019) and that Plaintiff's filing of the instant action on January 26, 2020—55 days later—was timely. (*See generally* Complaint, Dkt. 1.)

2

does not suffer from an impairment or combination of impairments that is severe, then the plaintiff is not disabled. *Id.* § 404.1520(a)(4)(ii). But if the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether it meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.* § 404.1520(a)(4)(iii); *see also id.* pt. 404, subpt. P, app. 1. If the ALJ determines at step three that the plaintiff has one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act. *Id.* § 404.1520(a)(4)(iii). On the other hand, if the plaintiff does not have a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing on to steps four and five. To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 404.1545(a)(1). The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the answer is yes, the plaintiff is not disabled. *Id.* Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 404.1520(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits. *Id.*

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 6, 2016. (Tr. 14.) At step two, the ALJ determined that Plaintiff had the following severe impairments: asthma, COPD, and sleep apnea. (*Id.*) The ALJ also determined that Plaintiff's obesity, gastritis, hypertension, and "medically determinable mental impairment of panic disorder" were all "non[-]severe." (*Id.*) At step three, the ALJ found

3

that Plaintiff's impairments did not meet or medically equal any of the listed impairments in the Listings. (Tr. 15.) The ALJ then determined Plaintiff's RFC as follows:

> [T]he claimant retains the [RFC] to perform light work, which requires lifting and/or carrying objects weighing up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking up to six hours in an eight-hour workday, and sitting up to six hours in an eight-hour workday. . . . [T]he claimant is limited to occasional climbing and needs to avoid working at unprotected heights or with hazardous machinery, and avoid concentrated exposure to respiratory irritants but can be exposed to irritants that would be found in a normal work setting[.]

(Tr. 19.) Then, at step four, the ALJ concluded that due to her severe impairments, Plaintiff could not perform her past work as a cleaner and child monitor. (Tr. 19.) Finally, at step five, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including cashier, routing clerk, and mail clerk. (Tr. 20.) The ALJ thus concluded that Plaintiff was not disabled. (Tr. 20–21.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (alterations and internal quotation marks omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (citation omitted). However, "it is up to the agency, and not this court, to weigh the conflicting

4

evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (per curiam).

## DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and suffers from several legal errors, including the following: (1) the ALJ erred at step two in assessing the severity of Plaintiff's anxiety; (2) the ALJ failed to properly evaluate Plaintiff's RFC; and (3) the ALJ failed to develop the record. (Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mot."), Dkt. 12-1, at 11–15.) For the reasons set forth below, the Court grants Plaintiff's motion and remands for the ALJ to develop the evidentiary record further regarding Plaintiff's mental impairment and to explain the medical and non-medical evidence supporting the RFC determination. *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *13 (E.D.N.Y. Sept. 28, 2017) ("In addition to its authority to affirm, modify, or reverse a final decision, the Court may remand the case for the ALJ to further develop the record, resolve conflicts and ambiguities, or elucidate his or her rationale.")

## I. The ALJ Failed to Develop the Record on Plaintiff's Mental Impairment

The Court finds that the ALJ failed to properly develop the record with respect to Plaintiff's mental impairment. "The ALJ's failure to develop the record is a threshold issue, because the Court cannot rule on whether the ALJ's decision regarding [Plaintiff's] functional capacity was supported by substantial evidence if the determination was based on an incomplete record." *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 267 (S.D.N.Y. 2016) (quotation marks and citation omitted); *see Alvarez v. Comm'r of Soc. Sec.*, No. 14-CV-3542 (MKB), 2015 WL 5657389, at *14 (E.D.N.Y. Sept. 23, 2015). It is well-established in the Second Circuit that an ALJ presiding over

5

a social security hearing must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009)). The ALJ's duty to develop the record is "heightened" when the claimant decides, as Plaintiff did here, to proceed *pro se*. *Id.* at 113 (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)); (Tr. 12 (noting that claimant was informed of the right to representation but chose to appear and testify without the assistance of an attorney or other representative).) In that circumstance, "[t]he ALJ must adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered and by scrupulously and conscientiously probing into, inquiring of, and exploring for all the relevant facts." *Moran*, 569 F.3d at 113 (internal quotation and alterations omitted). To fulfill this duty, the ALJ must not only "obtain a claimant's medical records and reports but also [] question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Craig*, 218 F. Supp. 3d at 261 (citation omitted).

The Commissioner argues that the ALJ "is not required to develop the record any further when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability'" (Cross-Motion for Judgement on the Pleadings ("Cross-Mot."), Dkt. 16-1, at 14–15 (quoting *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (summary order))), and that here, "the lack of evidence in support of more than minimal work-related limitations related to Plaintiff's anxiety or other mental impairments . . . [means] further development is plainly not warranted under the facts" (*id.* at 15). However, "[a]n ALJ has an affirmative duty to develop the medical record, . . . and to seek out further information where evidentiary gaps exist, or where the evidence is inconsistent or contradictory." *Rosado v. Comm'r of Soc. Sec.*, No. 17-CV-2035 (PKC), 2018

6

WL 2229135, at *5 (E.D.N.Y. May 16, 2018) (citing *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999)). Here, the record contained inconsistencies related to Plaintiff's mental impairment, specifically her diagnoses and reports of panic disorder and chronic anxiety, which required the ALJ to develop the record further.

In finding that Plaintiff's "medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas," the ALJ emphasized the insufficiency of the evidence. (*See* Tr. 15.) The ALJ cited a "one time diagnosis" of "panic disorder" based on an emergency room visit at Kings County Hospital Center on February 13, 2016, as well as treatment records that show Plaintiff's self-described depression screening ("PHQ") and self-described anxiety screening ("GAD") with "0 scores, i.e., [Plaintiff] described herself as neither depressed nor anxious."[3] (*Id.*) However, in discussing Plaintiff's RFC, the ALJ acknowledged other evidence in the record indicating that Plaintiff has perhaps more than a "one time" or negligible mental impairment, including a February 11, 2016 record from New York Methodist Hospital documenting that Plaintiff experienced difficulty sleeping due to shortness of breath, "got nervous," and went to the emergency room, where the examining physician noted "likely COPD exacerbation versus anxiety (more likely)."[4] (Tr. 17, 391). The ALJ also noted Plaintiff's testimony from the August 29, 2018 hearing that sometimes her daughter goes shopping with her "because [Plaintiff] panics when she is out alone and starts having trouble breathing" and that she

---

[3] The ALJ noted that Plaintiff did not allege a psychiatric condition. (Tr. 15; *see* Tr. 29.)

[4] It is unclear whether this note was intended to mean that Plaintiff's symptoms were attributable to COPD exacerbation or anxiety. The Commissioner argues that the "latter condition," *i.e.*, anxiety, was identified as the "more likely cause of her symptoms." (Cross-Mot., Dkt. 16-1, at 2.) The ambiguity around the meaning of this note in Plaintiff's treatment record only underscores the need for further development of the record regarding Plaintiff's mental impairment.

"has trouble sleeping some nights because she loses her breath and then panics and [is] unable to go back to sleep due to fear of losing breath." (Tr. 16.) In addition, despite minimizing Plaintiff's "one time" diagnosis of panic disorder on February 13, 2016 in his discussion at step two, the ALJ later noted that the diagnosis was, in fact, for "panic disorder (episodic paroxysmal anxiety) without agoraphobia," but then discounted this diagnosis because "no procedures were performed." (Tr. 17.) Thus, even within the evidence cited by the ALJ in his decision, there are "inconsistenc[ies]" related to Plaintiff's reports and diagnoses of panic and anxiety. *See Rosado*, 2018 WL 2229135, at *5.

The need to further develop the record related to Plaintiff's mental impairment is all the more evident in light of evidence the ALJ omitted from his decision.[5] For example, the ALJ described Plaintiff's February 29, 2016 visit to the emergency department at Interfaith Medical Center complaining of, *inter alia*, difficulty swallowing solid foods and liquids, difficulty breathing when lying down after a meal, a 27-pound weight loss in the last month, and chest pain. (Tr. 17.) However, the ALJ omitted from this description that the record for this hospital visit indicated Plaintiff's medical history of "anxiety like illness" (Tr. 562), Plaintiff's report of a "panic feeling" when lying down after a meal (*id.*), the description of Plaintiff as an "African American female looking anxious, not in distress" (Tr. 564), and Plaintiff's secondary diagnosis of, *inter alia*, "chronic" "anxiety" (Tr. 568). The ALJ also omitted any reference to Plaintiff's May 1, 2016 Function Report in which she described her "daily activities" as requiring her to "sit down and rest

---

[5] The Court recognizes that "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered," and further that "an ALJ is not required to discuss every piece of evidence submitted." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citations omitted). However, the Court notes these omissions from the ALJ's decision to illustrate the inconsistencies in the record related to Plaintiff's panic disorder and chronic anxiety, which the ALJ had a duty to investigate and reconcile through further development of the record.

[because] sometimes [she] get[s] [a]nxiety" (Tr. 293); her ability to talk as "I can talk[;] [I] just get shortness of breath a[]lot and [a]nxiety" (Tr. 298); and her twice daily asthma attacks as causing "shortness of breath" and making her "sometimes [] panic and go into [a]nxiety" (Tr. 300). Additionally, the ALJ did not reference records for a May 2, 2017 visit to the Interfaith Medical Center emergency department due to chest pain, which also note Plaintiffs history of "anxiety like illness" and indicate a diagnosis of "chronic" "anxiety."[6] (Tr. 629, 635.)

Thus, what the Commissioner characterizes as a "lack of evidence in support of more than minimal work-related limitations related to Plaintiff's anxiety or other mental impairments" (Cross-Mot., Dkt. 16-1, at 15), the Court views as a selective reading of an underdeveloped record regarding Plaintiff's documented history of panic and anxiety. At step two, the ALJ indicated that his finding that Plaintiff's panic disorder does not cause more than minimal limitation in her ability to perform basic mental work activities was based on his consideration of the "four broad areas of mental functioning."[7] (Tr. 14–15.) However, the ALJ failed to offer specific findings to explain his conclusion that Plaintiff faced "no limitation" in any of the areas of mental functioning. (*See id.*; *see also* 20 C.F.R. § 404.1520a(e)(4) ("The [ALJ's] decision must include a specific finding as to the degree of limitation in each of the functional areas[.]").) Indeed, the Court finds that the evidence is too scant and underdeveloped for the ALJ to make such findings. Many, if not most,

---

[6] The Court notes that the records for an earlier March 2, 2016 visit to the Interfaith Medical Center emergency department due to difficulty swallowing and tightness in chest, referenced Plaintiff's history of "anxiety like illness," but did not include an anxiety diagnosis. (Tr. 574, 577.) The inconsistency in Plaintiff's chronic anxiety diagnosis across the medical records only underscores the need for further development of the record regarding Plaintiff's mental impairment.

[7] The "four broad areas of mental functioning" include "(1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or managing pace; and (4) adapting or managing oneself." (Tr. 15 (citing 20 C.F.R., Part 404, Subpart P, Appendix 1).)

of Plaintiff's medical records relate to emergency department visits and do not address any course of treatment for her diagnoses of panic disorder and/or chronic anxiety. (*See generally* Tr. 356–389 (Kings County Hospital Center records); Tr. 344–50, 390–403 (New York Methodist Hospital records); Tr. 404–418, 434–542 (Wyckoff Heights Medical Center records); Tr. 419–33, 553–90, 601–694 (Interfaith Medical Center records).) Further, the records obtained from Plaintiff's primary care provider, Advantage Care Physicians, do not address any of Plaintiff's mental health diagnoses, and do not include a medical source statement. (*See* Tr. 18, 26–154, 725–84.) Thus, the Court finds that just as a consultative internal medicine examination was conducted by Dr. John Fkiaras, M.D., to round out the evidence regarding Plaintiff's physical impairments (*see* Tr. 18, 593–600), a consultative psychological examination should have also been conducted to resolve ambiguities in the record regarding the severity of Plaintiff's panic disorder and chronic anxiety, as well as the impact of these impairments on her functional capacity. *See Caban v. Comm'r of Soc. Sec.*, No. 18-CV-929 (PKC), 2019 WL 4254000, at *6 (E.D.N.Y. Sept. 9, 2019) ("A consultative examination is necessary when trying to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow the ALJ to make a determination or decision on a claim." (quotation and alterations omitted)); *Maldonado v. Comm'r of Soc. Sec.*, No. 16-CV-6678 (CJS), 2018 WL 1192894, at *4–5 (W.D.N.Y. Mar. 8, 2018) (remanding "because the ALJ failed to properly develop the record concerning Plaintiff's mental impairments" and directing the ALJ to consider "whether to develop the record by obtaining a consultative psychological examination"); *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 344 (E.D.N.Y. 2010) ("If the information obtained from the claimant's medical sources is not sufficient to make a disability determination, or the Commissioner is unable to seek clarification from treating

sources, the Commissioner will then ask the claimant to attend one or more consultative evaluations.").

In addition, the ALJ had an obligation to develop the record regarding Plaintiff's mental impairment by exploring Plaintiff's reports of panic and anxiety at the hearing. *Craig*, 218 F. Supp. 3d at 261 ("Th[e ALJ's] responsibility 'encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity.'" (quoting *Pena v. Astrue,* No. 07-CV-11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008))). During the hearing, the ALJ did not ask a single question about Plaintiff's documented history of panic and anxiety. The topic only came up briefly when the ALJ asked Plaintiff whether there was anything else she wanted him to know about her condition, and Plaintiff responded that "it wakes me up at nighttime . . . I panic."[8] (Tr. 168.) Plaintiff explained that "[s]ome nights" she does not sleep and instead "walk[s] the floor at night because [she] can't sleep because of the like . . . "; however, at this point, the ALJ interrupted Plaintiff to ask how often this happens. (*Id.*) Plaintiff responded, "Like maybe every other night or I'll sit up because I can't sleep." (*Id.*) The ALJ then abruptly switched topics to address Plaintiff's work history and examine the vocational expert before ending the hearing. In light of this truncated testimony, the Court finds that the ALJ failed to adequately question Plaintiff about her subjective complaints of panic and anxiety and the impact of these impairments on her functional capacity.

In reaching the conclusion that the record was underdeveloped with respect to Plaintiff's mental impairment, the Court notes that "[t]he duty to develop the record is particularly important

---

[8] The Court interprets Plaintiff's testimony to mean that her difficulty breathing wakes her up at night.

11

where an applicant alleges [s]he is suffering from a mental illness, due to the difficulty in determining whether these individuals will be able to adapt to the demands or stress of the workplace." *Merriman v. Comm'r of Soc. Sec.*, No. 14-CV-3510 (PGG) (HBP), 2015 WL 5472934, at *19 (S.D.N.Y. Sept. 17, 2015) (internal quotations, alterations, and citation omitted); *see Alvarez*, 2015 WL 5657389, at *18 (collecting cases). Here, the ALJ simply noted that Plaintiff did not allege a psychiatric condition. (Tr. 15; *see* Tr. 29.) However, Plaintiff's failure to allege a psychiatric condition on her benefits application (*see* Tr. 282) did not relieve the ALJ of his duty to consider this impairment because "the ALJ is required to consider impairments a claimant alleges *or* those 'about which [the ALJ] receive[s] evidence.'" *Fontanez*, 2017 WL 4334127, at *16 (emphasis and alterations in original) (quoting 20 C.F.R § 404.1512(a)(1)); *see Rockwood v. Astrue*, 614 F. Supp. 2d 252, 275–76 (N.D.N.Y. 2009) (finding that ALJ erred in not considering plaintiff's obesity because, although obesity was not alleged as a disabling condition, "the record provided ample evidence to notify the ALJ that Plaintiff suffered from obesity, including a diagnosis from her treating physician"); *cf. Santos v. Astrue*, No. 12-CV-2075 (JGK), 2013 WL 5462337, at *5 (S.D.N.Y. Sept. 30, 2013) ("[T]he few cases that mention the significance of omitting allegations of mental impairments from an application for disability benefits involve other substantial indications that significant mental impairments were lacking" (collecting cases)). As already explained, the Court finds that there was adequate evidence of panic disorder and chronic anxiety in the record to require the ALJ to further develop the evidentiary record on these fronts.

In sum, the Court finds that the ALJ's failure to develop the record with respect to Plaintiff's mental impairment is grounds for vacating the ALJ's decision and remanding the case for further proceedings. *See Moran*, 569 F.3d at 114–15 (vacating the ALJ's decision "not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have

developed a more comprehensive record before making his decision"); *Alvarez*, 2015 WL 5657389, at \*14 ("An ALJ's 'failure to develop the record adequately is an independent ground for vacating the ALJ's decision and remanding the case.'" (citation omitted)). On remand, the ALJ should further develop the record related to Plaintiff's panic disorder and chronic anxiety, and should consider whether to obtain a consultative psychological examination. Upon further development of the record, the ALJ should include specific findings as to the degree of Plaintiff's limitation in each of the four broad areas of mental functioning. *See* 20 C.F.R. § 404.1520a(e)(4).

## II. The Court Cannot Conclude that any Error at Step Two was Harmless

Plaintiff argues that the ALJ erred in assessing the severity of Plaintiff's anxiety at step two. (Pl.'s Mot., Dkt. 12-1, at 11–13.) Having determined that the evidentiary record was not adequately developed concerning Plaintiff's mental impairment, the Court is not able to meaningfully assess the impact of the ALJ's step two determination of Plaintiff's mental impairment or conclude, as the Commissioner urges, that any error was harmless. However, the Court will briefly address the Commissioner's argument that "[e]ven assuming *arguendo* that the ALJ could have found severe mental limitations, any error at step two is harmless where the ALJ considers the effects of all the claimant's impairments through the remainder of the sequential evaluation process." (Cross-Mot., Dkt. 16-1, at 12.) While an ALJ's erroneous determination of an impairment as non-severe at step two may ultimately be harmless when the "functional effects" of that impairment are, "nonetheless, fully considered and factored into subsequent residual functional capacity assessments," the error is *not* harmless when there is "no discernible basis for the court to conclude that [the] ALJ [] factored [the non-severe impairment] or its functional effects into [the] ultimate residual functional capacity determination." *Snyder v. Colvin*, No. 13-CV-585 (GLS) (ESH), 2014 WL 3107962, at \*5 (N.D.N.Y. July 8, 2014). *Compare id.* (finding that any step two error was not harmless because the ALJ did not mention, *inter alia*, a consultative

13

psychological examiner's opinion regarding plaintiff's mental limitations from depression and did not "include any mental limitations in her articulation of [plaintiff]'s [RFC] to account for moderate limitations observed by the mental health professionals"), *with Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding that any error at step two would have been harmless because the ALJ "specifically considered" the plaintiff's anxiety and panic attacks in subsequent steps).

Here, although the ALJ briefly recounted select portions of the record addressing Plaintiff's self-reported panic (*e.g.*, when she is out alone or sleeping and has trouble breathing), the note from an examining physician of "COPD exacerbation versus anxiety (more likely)," and Plaintiff's diagnosis of "panic disorder (episodic paroxysmal anxiety) without agoraphobia" (*see* Tr. 16–17), the ALJ did not specifically consider this evidence in his RFC analysis, nor did he consider the *combined* effect of any non-severe mental impairment and the severe impairments of asthma, COPD, and sleep apnea on Plaintiff's functional capacity.[9] *Cf. Snyder*, 2014 WL 3107962, at *5 (noting that a step two severity error may be harmless "when an administrative law judge identifies *some* severe impairments at Step 2, and then proceeds through sequential evaluation on the basis of *combined* effects of all impairments" (first emphasis in original and second emphasis added)). Moreover, the ALJ did not include any mental limitations in his articulation of Plaintiff's RFC, nor any explanation for why such limitations are unnecessary. Thus, the Court cannot conclude

---

[9] An analysis of the combined effect of any non-severe mental impairment and Plaintiff's severe impairments would seem to be particularly appropriate here because the evidence suggested a strong connection between Plaintiff's experience of shortness of breath and her feelings of panic and anxiety. (*See, e.g.*, Tr. 298 ("I can talk[;] [I] just get shortness of breath a[]lot and [a]nxiety"), Tr. 300 (describing how asthma attacks cause shortness of breath, panic, and anxiety), Tr. 391 (noting "likely copd exacerbation vs [an]xiety (more likely)").)

that any step two severity error was in fact harmless given that the ALJ did not "specifically consider" Plaintiff's panic and anxiety beyond step two.

### III. The ALJ Failed to Adequately Explain the RFC Determination

Finally, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's RFC by making findings that are inconsistent with Plaintiff's own reports about her functional capacity and the opinion of the consultative examiner, Dr. Fkiaras. (Pl.'s Mot., Dkt. 12-1, at 13–15.) The Court agrees.

The ALJ is responsible for assessing the plaintiff's RFC "based on all the relevant evidence in the case record." *Pellot v. Comm'r of Soc. Sec.*, No. 18-CV-3337 (AMD), 2019 WL 3500919, at *1 (E.D.N.Y. July 31, 2019) (citation omitted). In doing so, the ALJ "must discuss the relevant evidence and factors crucial to the overall determination with sufficient specificity to enable reviewing courts to decide whether its determination is supported by substantial evidence." *Id.* (quoting *Estrada ex rel. E.E. v. Astrue*, No. 08-CV-3427, 2010 WL 3924686, at *3 (E.D.N.Y. Sept. 29, 2010)). With respect to the RFC assessment, the ALJ "is required to include 'a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Id.* (quoting SSR 96-8P, 1996 WL 374184, at *7). Where an ALJ "does not discuss the relevant evidence and factors with sufficient specificity, the court must remand the case." *Id.* (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).

In making the RFC determination here, the ALJ stated that he gave "substantial weight" to Dr. Fkiaras's one-time consultative examination of Plaintiff and his opinion, noting that it is "consistent with the treatment records and hospital records," and further, that Plaintiff's doctors, including her primary care providers Advantage Care Physicians, "were requested to provide a medical source statement, but failed to do so." (Tr. 18–19.) Dr. Fkiaras examined Plaintiff on

June 23, 2016 (Tr. 593), and provided the following medical source statement—which is the only medical source statement in the record:

> The claimant should avoid smoke, dust, and known respiratory irritants. The claimant is restricted from activities which require exposure to unprotected height. The claimant is restricted from driving and operating machinery. The claimant has a moderate limitation lifting, carrying, pushing, and pulling. The claimant has a moderate limitation climbing stairs.

(Tr. 595). Notably, Dr. Fkiaras provided no guidance on how much exposure to smoke, dust, and known respiratory irritants Plaintiff could tolerate, and simply instructed that such irritants should be avoided. However, in the RFC determination, the ALJ included the limitation that Plaintiff should "avoid *concentrated* exposure to respiratory irritants but can be exposed to irritants that would be found in a normal work setting." (Tr. 15 (emphasis added).) The ALJ did not explain the basis for his divergence from Dr. Fkiaras's opinion, nor the basis for his determination that Plaintiff could be exposed to irritants that are "found in a normal work setting."[10] The absence of any "narrative discussion describing how the evidence supports [this] conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)," *Pellot*, 2019 WL 3500919, at *1, is particularly troubling given Plaintiff's statements about the adverse impact of irritants on her ability to breathe. For example, Plaintiff, who had been diagnosed with COPD, explained in her request for an ALJ hearing that she "can't take any kind of strong smells[,] takes my breath" (Tr. 196); and in her Function Report that she

---

[10] Although the RFC includes the limitation that Plaintiff "needs to avoid working at unprotected heights or with hazardous machinery" (Tr. 15), the ALJ did not address nor explain his omission of Dr. Fkiaras's specific recommendation that Plaintiff be "restricted from driving and operating machinery" (Tr. 595).

16

does "laundry [and] cleaning" but "can't use certain chemicals" (Tr. 294); and that her frequent asthma attacks are triggered by "different smells or excitement" (Tr. 300).[11]

Similarly, the ALJ failed to include a narrative discussion describing how the medical facts and nonmedical evidence support his specific conclusions that Plaintiff "retains the [RFC] to perform light work, which requires lifting and/or carrying objects weighing up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking up to six hours in an eight-hour workday, and sitting up to six hours in an eight-hour workday." (Tr. 19.) Notably, Dr. Fkiaras's opinion and medical source statement, which make no reference to how many pounds Plaintiff can lift or how many hours she can stand and/or walk, do not substantiate these findings. (*See* Tr. 595.) Rather the ALJ cites, generically and without specification, "findings from the physical examinations and diagnostic tests as well as the treatment notes" discussed in his decision. (Tr. 19.) The ALJ also cites Plaintiff's testimony that "she can perform activities of daily living such as bathing and grooming herself, doing dishes, doing her own laundry, and shopping, which shows she has the capacity to perform basic work activity." (Tr. 19.) However, this, on its own, is not sufficient to support the ALJ's RFC determination. *See Munnings-Bah v. Saul*, No. 19-CV-3510 (LJL) (RWL), 2020 WL 5755065, at *19 (S.D.N.Y. Sept. 14, 2020) (finding that Plaintiff's "daily activities and work experience, at least without more information, do not provide substantial evidence supporting the ALJ's RFC determination"), *report and recommendation adopted sub nom. Bah v. Comm'r of Soc. Sec.*, 2020 WL 5880182 (S.D.N.Y. Oct. 2, 2020); *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000) ("[Activities of daily living] do not by themselves

---

[11] The Court also notes that Plaintiff's medical records from New York Methodist Hospital contain general educational materials about COPD, which state that the causes for COPD include exposure to "air pollution, chemical fumes, or dust" and instruct patients to "[a]void exposure to all substances that irritate the airway." (Tr. 347, 349.)

17

contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." (internal quotation and citation omitted)).

In fact, Plaintiff's testimony and Function Report generally revealed the *limits* to her capacity to perform basic work activities. For example, Plaintiff's daughter accompanied her shopping "a lot of times" because of Plaintiff's difficulty breathing and the panic that that induced (Tr. 166); Plaintiff could lift "maybe like five [pounds]" with "one hand" "[b]ecause sometimes . . . if [something was] too heavy . . . [she would] lose [her] breathing" and it would "make [her] heart race" (Tr. 167–68); Plaintiff could not "bend down to tie [her] shoe without getting out of breath[]" (Tr. 293); Plaintiff would "get out of breath quick" when climbing stairs and "get out of breath reaching too high" (Tr. 297); Plaintiff could walk only "2 or 3 blocks" before needing to stop and rest for "15 to 20 minutes" (Tr. 298; *see also* Tr. 167 (testimony that Plaintiff can walk for "maybe a half a block and then [she] ha[s] to stop . . . take [her] breath and walk a little bit more"); and Plaintiff could not finish what she started and "sometimes [] ha[d] to sit and take a break" (Tr. 298). In the face of such reports, the ALJ's failure to discuss with specificity the medical evidence relevant to the RFC findings—in particular, any evidence that supports his conclusions that Plaintiff could occasionally carry objects weighing 20 pounds, frequently carry objects weighing 10 pounds, and stand and/or walk up to six hours in an eight-hour workday—requires remand. *Pellot*, 2019 WL 3500919, at *1.

Moreover, "[b]ecause an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Hilsdorf*, 724 F. Supp. 2d at 347 (citing, *inter alia*, *Woodford*, 93 F. Supp. 2d at 529 ("An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do

18

not specifically explain the scope of claimant's work-related capabilities.")). For the reasons already stated, the ALJ has not made sufficiently clear how, if at all, the only expert medical opinion in this matter—Dr. Fkiaras's one-time consultative opinion—supports the RFC determination. The Court finds that the ALJ has therefore committed legal error and that remand is necessary. On remand, the ALJ should explain with specificity how the evidence, both medical and non-medical, supports the RFC determination.

## CONCLUSION

For the reasons set forth herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2021
      Brooklyn, New York