UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
PAMELA ANNETTE DANIELS,

                 Plaintiff,

        - against -

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-430 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Pamela Annette Daniels filed this action pursuant to 28 U.S.C. § 405(g) to challenge an adverse determination by the Social Security Administration ("SSA"), which denied Plaintiff benefits. After the parties filed cross-motions for judgment on the pleadings, the Court granted Plaintiff's motion and remanded to the SSA, where Plaintiff was awarded roughly $57,164.52 in past-due benefits. Plaintiff's counsel, Daniel Adam Osborn of Osborn Law, now moves for $14,291.13 in attorney's fees pursuant to 42 U.S.C. § 406(b). For the reasons explained below, Osborn Law's motion is granted.

## BACKGROUND

After being denied benefits by the SSA, Plaintiff retained Osborn Law and filed this action on January 26, 2020. (Dkt. 1.) After the parties filed cross-motions for judgment on the pleadings, and Plaintiff filed a reply, the Court granted Plaintiff's motion and remanded to the SSA. (Dkt. 18.) The Court awarded Plaintiff $8,500 in attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Dkt. 20; 04/30/2021 Docket Order.) On December 15, 2021, the SSA mailed Plaintiff a Notice of Award letter informing her that she would receive approximately $57,164.52 in past-due benefits, with 25% ($14,291.13) withheld as possible fees

for her attorney.  (Dkt. 21-7.[1])  That letter, however, was not sent to Osborn Law.  (*Id.*)  Instead, it was sent to prior counsel.  (*Id.*)  Osborn Law did not receive the notice of award letter until January 28, 2022.  (*Id.*)  By motion filed on February 14, 2022, Osborne Law now seeks $14,291.13 for work performed before this Court.  (Dkt. 21-1.)

Along with Osborn Law's motion, counsel has submitted a fee agreement, demonstrating that Daniels retained Osborne Law on a 25% contingency-fee basis, and itemized time records, indicating that Osborn Law spent a total of 42.3 hours litigating this matter before this Court.  (Dkts. 21-3, -4.)  $14,291.13 for 42.3 hours of work would be an effective hourly rate of $337.85 per hour.

## DISCUSSION

### I.    Timeliness

Motions for attorney's fees under 42 U.S.C. § 406(b) must be filed within the 14-day filing period proscribed by Rule 54(d) of the Federal Rules of Civil Procedure.  *Sinkler v. Berryhill*, 932 F.3d 83, 91 (2d Cir. 2019).  The 14-day period begins to run from when "counsel receives notice of the benefits award," and the law presumes that "a party receives communications three days after mailing."  *Id.* at 87–89 & n.5.[2]  Furthermore, because Rule 54(d) allows judges to extend the

---

[1] The letter does not state the exact amount of past-due benefits awarded, but notes that the SSA "usually" withholds 25% for potential attorney's fees and, in this case, was withholding $14,291.13.  (Dkt. 21-7.)

[2] The SSA insists, in this case and others, that the 14-day filing period runs from when the claimant—not counsel—receives notice of the benefits award.  (*See* Dkt. 22.)  As this Court has repeatedly discussed, *Sinkler* contains two sentences that are apparently contradictory, at least in cases where the claimant and counsel receive notice on different dates—one stating that the 14-day filing period runs from when the *claimant* receives notice, and one stating that the 14-day filing period runs from when *counsel* receives notice.  Despite the SSA's insistence, this Court and others have repeatedly concluded that "starting the 14-day period when *counsel* receives notice of the benefit award is more consistent with *Sinkler*'s logic, because until counsel receives notice of the award, the amount of the award remains 'as-yet-unknown' to the relevant party filing the § 406(b) motion."  *Hanlon v. Comm'r of Soc. Sec.*, No. 18-CV-7090 (PKC), 2022 WL 103640, at

14-day deadline by court order, "district courts are empowered to enlarge that filing period where circumstances warrant." *Id.* at 89.

Here, Osborn Law received the notice of benefits award on January 28, 2022, and filed the present motion on February 14, 2022.  (Dkt. 21-1.)  The motion was thus filed three days late.  However, given that the lateness is *de minimis* and there is no prejudice to the SSA or the claimant, the Court grants a three-day *nunc pro tunc* extension of time to file.  The motion was thus timely filed.

## II.     Reasonableness of the Requested Fee

### A.     Legal Standard

Section 406(b) of the Social Security Act provides that a court may award a "reasonable fee . . . not in excess of 25% of the total of the past-due benefits to which the claimant is entitled." 42 U.S.C. § 406(b).  If the contingency percentage is within the 25% cap, and there is no evidence of fraud or overreaching in making the agreement, a district court should test the agreement for reasonableness.  *Fields v. Kijakazi*, 24 F.4th 845, 853 (2d Cir. 2022).

To determine whether a fee is reasonable, a district court should consider (1) the character of the representation and the results the representative achieved; (2) whether counsel was responsible for a delay, unjustly allowing counsel to obtain a percentage of additional past-due

---

*2 (E.D.N.Y. Jan. 11, 2022); *Williams v. Comm'r of Soc. Sec.*, No. 18-CV-4734 (PKC), 2021 WL 4480536, at *2 (E.D.N.Y. Sept. 30, 2021) (collecting cases).  Despite this district's local rule that, "[u]nless otherwise established, the Court will assume that counsel representing the plaintiff in federal court received notice of the benefits calculation at the same time as the plaintiff," Local Rule 5.5(g)(1), where—as here—Plaintiff's counsel has represented that he received the notice after Plaintiff, the time to file a § 406(b) motion starts from the day counsel receives the notice of award letter.

benefits[3]; and (3) whether the requested amount is so large in comparison to the time that counsel spent on the case as to be a windfall to the attorney." *Id.* at 849 & n.2, 853.

With respect to whether a fee would be a "windfall," in *Fields* the Second Circuit emphasized that "the windfall factor does *not* constitute a way of reintroducing the lodestar method and, in doing so, . . . indicate[d] the limits of the windfall factor." *Id.* at 854. Rather, "courts must consider more than the de facto hourly rate" because "even a relatively high hourly rate may be perfectly reasonable, and not a windfall, in the context of any given case." *Id.* The Second Circuit instructed courts to consider (1) "the ability and expertise of the lawyers and whether they were particularly efficient, accomplishing in a relatively short amount of time what less specialized or less well-trained lawyers might take far longer to do," (2) "the nature and length of the professional relationship with the claimant—including any representation at the agency level," (3) "the satisfaction of the disabled claimant," and (4) "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result." *Id.* at 854–56. Ultimately, a district court may reduce the amount called for in the contingency fee agreement "only when [the court] finds the amount to be unreasonable," after considering the factors outlined above. *Id.* at 852–53.

In addition, if fee awards are made to a claimant's attorney under both the EAJA and § 406(b), the attorney must refund the claimant the amount of the smaller fee. *Gisbrecht v. Barnhart*, 535 U.S. 789, 789 (2002); *Wells v. Bowen*, 855 F.2d 37, 48 (2d Cir. 1988) ("Once

---

[3] This is because the amount of benefits a successful plaintiff receives is calculated from the date of onset up to the date the SSA awards benefits on remand. *See Fields*, 24 F.4th at 849 n.4 ("Undue delay can be a particular problem in cases like these, in which past-due benefits are at stake. Because delay increases the size of a plaintiff's recovery, it may also increase disproportionately a lawyer's contingent fee recovery. [W]here the attorney is responsible for delay, the attorney should not be allowed to profit from the accumulation of benefits during the pendency of the case in court." (internal quotation marks and citation omitted)).

appropriate fees under 42 U.S.C. § 406(b) are calculated, the district court should order [the attorney] to return the lesser of either that amount or the EAJA award to his clients."); *Barbour v. Colvin*, No. 12-CV-548 (ADS), 2014 WL 7180445, at *2 (E.D.N.Y. Dec. 10, 2014) (citing *Porter v. Comm'r of Soc. Sec.*, No. 06-CV-1150 (GHL), 2009 WL 2045688, at *3 (N.D.N.Y. July 10, 2009)).

    **B.** **Application**

Here, Plaintiff retained Osborne Law pursuant to a 25% contingency-fee agreement. (Dkt. 23-1.) There are no allegations of fraud or overreaching with respect to the retainer agreement. Osborn Law seeks the full 25% of Plaintiff's past-due benefits. At 42.3 hours of work, that would be an effective hourly rate of $337.85 per hour. For the reasons explained below, the court does not find that amount to be unreasonable in the context of this case.

First, "the character of the representation and the results the representative achieved" were satisfactory. Counsel's briefing identified all of the most important infirmities with the SSA's denial of benefits, and received a favorable decision from this Court and from the SSA on remand. This factor thus does not justify a downward adjustment.

With respect to whether counsel was responsible for a delay, unjustly allowing counsel to obtain a percentage of additional past-due benefits, the Court notes that Osborn Law did request an extension of time to file the moving brief. (Dkt. 11.) However, that request delayed briefing only one month, and was filed in June 2020, when COVID-19 was still causing significant disruptions to numerous aspects of life. All subsequent delays were caused by the SSA (*see* Dkts. 14, 15), and Osborn Law promptly filed a reply brief (Dkt. 17). In the context of this case, with the relatively low *de facto* hourly rate, the Court finds that this factor does not justify a downward adjustment.

With respect to "the ability and expertise of the lawyers and whether they were particularly efficient," the Court notes that 42.3 hours is on the higher end of what this Court has seen in these relatively straight forward social security appeals.  However, in *Fields*, the Second Circuit found that 25.8 hours reviewing an 863-page transcript, drafting a 19-page brief, and then obtaining a stipulation of dismissal demonstrated particular efficiency, and that "other lawyers might reasonably have taken twice as much time" to do the same work.  24 F.4th at 854.  Here, the transcript was 788 pages (Dkt. 10), the opening brief was 16 pages (Dkt. 12-1), and Osborn Law was also required to draft a reply brief (Dkt. 17).  Osborn Law did not spend double the hours on this case that plaintiff's counsel did in *Fields*, and Osborn Law drafted a reply brief, unlike counsel in *Fields*.  Furthermore, counsel in *Fields* sought and received from the Second Circuit a *de facto* hourly rate of $1,556.98.  Counsel here seeks less than 30% of that.  Thus, the Court finds that the lower efficiency of Plaintiff's counsel here compared to plaintiff's counsel in *Fields* does not justify a downward adjustment.

With respect to "the nature and length of the professional relationship with the claimant—including any representation at the agency level," the Court notes that, in *Fields*, plaintiff's counsel had represented the plaintiff from the start of the agency proceedings, including four separate hearings before Administrative Law Judges and multiple petitions to the SSA Appeals Council, further enabling plaintiff's counsel to efficiently brief its arguments before the district court, and distinguishing the case from some other cases that had found a windfall.  *See* 24 F.4th at 855. Here, Osborn Law was not retained until after the conclusion of the administrative process.  Osborn Law was thus necessarily less efficient at briefing the issues before this Court.  Again, however, since Osborn Law requests a *de facto* hourly rate of less than 30% of what Binder & Binder received in *Fields*, the Court does not find that this factor warrants a downward adjustment.

With respect to "how uncertain it was that the case would result in an award of benefits and the effort it took to achieve that result," the Court notes that it was readily discernable from the ALJ's decision in this case that the ALJ had failed to develop the record and that remand was therefore necessary.  (*See* Dkt. 18 at 7.)  Nonetheless, the Court's findings were not certain and Plaintiff's counsel was required to marshal all relevant grounds for remand.  Again, considering the relatively low *de facto* hourly rate requested by counsel, the Court does not find that this factor justifies a downward adjustment in the context of this case.

For the reasons explained above, the Court does not find the requested amount to be unreasonable.  However, upon receiving the § 406(b) award, Osborn Law must remit the $8,500 received pursuant to the EAJA to Plaintiff.

## CONCLUSION

For the foregoing reasons, it is hereby ordered that the motion for attorney's fees under 42 U.S.C. § 406(b) is granted, and Osborn Law is awarded $14,291.13.  Upon receipt of this award from the government, Osborn Law shall promptly refund Plaintiff $8,500, which represents the EAJA fees already received by counsel.  The case remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 25, 2022
     Brooklyn, New York